UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | | |
|---|---|---|
| MARTHA TUCKER, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Case No. 1:14-cv-163-jgm |
| | : | |
| LYLE DECKER, | : | |
| | : | |
| Defendant. | : | |
| | : | |

ORDER ON MOTION TO DISMISS
(Doc. 4)

I.   Introduction

Plaintiff Martha Tucker brings claims against Defendant Lyle Decker, a Vermont state police officer, for malicious prosecution, defamation, and invasion of privacy, torts under 42 U.S.C. § 1983 and state common law.  (Doc. 1.)  Decker moves to dismiss, arguing the Court lacks subject matter jurisdiction and he has qualified immunity.  (Doc. 4.)

II.   Factual Background

Plaintiff Tucker was Superintendent of Schools for the Caledonia Central Supervisory Union ("CCSU") from July 2008 through June 2014.  (Complaint ¶ 3.)  On April 29, 2013, J.B., a student at the Danville Union High School, alleged to Melissa Johnson, a support staff employee at the school, that teacher Jason Brigham had touched her bottom and rubbed her chest with his arm.  (Id. ¶ 6.) Johnson reported to Principal Noah Noyes who then reported the matter to Tucker.  (Id. ¶ 9.) Noyes did not discuss all of the specifics of J.B.'s allegations and advised Tucker that J.B. had a history of being untruthful and that he did not believe there was credible evidence to support J.B.'s allegations.  (Id.) The school's investigation concluded with a finding that there was no harassment.

(Id. ¶ 10.)  J.B.'s parents were notified in writing by Noyes of the incidents and the school's investigation.  (Id.)  Tucker did not report J.B.'s allegations to the Department of Children and Families ("DCF").

J.B.'s parents reported the matter to DCF, which contacted Vermont State Police.  (Id. ¶ 11.)  Defendant Decker, a Vermont state police officer (Id. ¶ 2), was assigned to investigate J.B.'s allegations for a possible criminal prosecution.  (Id. ¶ 13.)  In the course of his investigation, Decker interviewed Noyes, Johnson, Tucker, Brigham, J.B., J.B,'s parents, student witnesses, and Mary Cassidy, another adult from Brigham's classroom.  (Id. ¶ 14.)  Tucker alleges none of these interviewees gave Decker any reason to believe there had been reasonable grounds to conclude Brigham had engaged in abuse or neglect.  (Id. ¶ 15.)  Tucker also alleges Decker originally characterized Brigham's alleged contact with J.B.'s bottom as an "attaboy kind of slap" while later characterizing the contact as a "grab."  (Id. ¶ 16.)

Decker charged Tucker with neglect of duty by a public officer under 13 V.S.A. § 3006, a misdemeanor offense, and with violating her duty as a mandatory reporter under 33 V.S.A.§ 4913.  (Id. ¶ 20.)  Upon issuing Tucker citations, Decker fingerprinted and photographed her and submitted the information to a national database, where it remains.  (Id. ¶ 21.)  Tucker alleges 20 V.S.A. § 2061 did not authorize Decker to photograph her and that the State admitted this when charges against Tucker were dismissed.  (Id. ¶¶ 22, 23.)  Decker released photographs of Tucker to the press along with a statement that Tucker had violated the reporting law.  (Id. ¶¶ 24-25.)  Caledonia Superior Court dismissed criminal charges against Tucker on April 1, 2014.  (Id. ¶ 24.)  Negative publicity about the criminal charges prompted Tucker to resign her position.  She alleges she has been rejected for a comparable position due to the stigma associated with the charges.  (Id. ¶ 26.)

Tucker raises claims for malicious prosecution, defamation, and invasion of privacy and seeks "recovery for violation of her federal rights under 42 U.S.C. Section 1983." (Id. ¶¶ 27-40.) Decker moves to dismiss based on lack of subject matter jurisdiction under Rule 12(b)(1) and qualified immunity under 12(b)(6).

III.    Discussion

    A.    Standard of Review

A case is properly dismissed under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it. See Doyle v. Midland Credit Mgmt., Inc., 722 F.3d 78, 80 (2d Cir. 2013). To survive a Rule 12(b)(6) motion, the complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "[A] defendant presenting an immunity defense on a Rule 12(b)(6) motion instead of a motion for summary judgment must accept the more stringent standard applicable to this procedural route." McKenna v. Wright, 386 F.3d 432, 436 (2d Cir. 2004).

On both Rule 12(b)(1) and Rule 12(b)(6) motions, the Court must "accept all of the plaintiff's factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff." Seemann v. U.S. Postal Serv., No. 2:11-cv-206, 2012 WL 1999847, at *1 (D. Vt. June 4, 2012) (quoting Starr v. Georgeson S'holder, Inc., 412 F.3d 103, 109 (2d Cir. 2005)).

    B.    Subject Matter Jurisdiction

The plaintiff bears the burden of proof of establishing jurisdiction by a preponderance of the evidence. See Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). Absent diversity or a

statutory basis, a case should be dismissed under Ruler 12(b)(1) if the complaint does not demonstrate the existence of a federal question.  Id.

Decker argues Tucker's enumeration of state law claims for malicious prosecution, defamation, and invasion of privacy, coupled with summary requests for relief under 42 U.S.C. § 1983, do not meet the pleading standard.  Tucker responds that she need only plead sufficient facts to establish jurisdiction.  See Andrus v. Charlestone Stone Prods. Co., 436 U.S. 604, 608 n.6 (1978) (finding subject matter jurisdiction satisfied even when "the complaint does not in so many words assert § 1331(a) as a basis for jurisdiction, since the facts alleged in it are sufficient to establish such jurisdiction and the complaint appeared jurisdictionally correct when filed").  Tucker's stated causes of action, though framed as state law tort claims, are each sufficient to form the basis of a constitutional claim over which the Court has subject matter jurisdiction.  See Oakes v. Cooke, 858 F. Supp. 330, 334-35 (N.D.N.Y. 1994) ("The Second Circuit consistently has held that the common law elements of malicious prosecution also form the basis for imposition of liability under section 1983."); Paul v. Davis, 424 U.S. 693, 709 (1976) (defamation accompanied by stigma can make out a constitutional tort); Risica ex rel. Risica v. Dumas, 466 F. Supp. 2d 434, 440 (D. Conn. 2006) (recognizing a constitutional invasion of privacy claim involving a "substantive due process right in avoiding public disclosure of personal matters").  Accordingly, Tucker has met her burden of pleading facts sufficient to establish subject matter jurisdiction.

    C.    Qualified Immunity

State officials are entitled to qualified immunity when their alleged conduct does not "violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 817-18 (1982).  To determine whether an official is entitled to qualified immunity, courts engage in a two-pronged inquiry asking whether (1) the facts

show the officer's conduct violated a federal right and (2) whether the right in question was clearly established at the time of the violation. See Tolan v. Cotton, 134 S. Ct. 1861, 1865-66 (2014). "Courts have the discretion to decide the order in which to engage these two prongs." Id. at 1866. "Although a mere mistake in the performance of an official duty may not deprive the officer of qualified immunity, the doctrine does not shield performance that either (a) was in violation of clearly established law, or (b) was plainly incompetent." Manganiello v. City of New York, 612 F.3d 149, 165 (2d Cir. 2010). The defendant bears the burden of establishing qualified immunity. See Vincent v. Yelich, 718 F.3d 157, 166 (2d Cir. 2013).

"Qualified immunity is an affirmative defense, and an affirmative defense is normally asserted in an answer." McKenna, 386 F.3d at 435 (internal citation omitted). Although "[u]sually, the defense of qualified immunity cannot support the grant" of a motion to dismiss under Rule 12(b)(6), such a motion may be granted where "the complaint itself establishes the circumstances required as a predicate to a finding of qualified immunity." Green v. Maraio, 722 F.2d 1013, 1018 (2d Cir. 1983) (citing Harlow, 457 U.S. at 807-08); see also McKenna, 386 F.3d at 436 ("[W]e see no reason why even a traditional qualified immunity defense may not be asserted on a Rule 12(b)(6) motion as long as the defense is based on facts appearing on the face of the complaint.").

      i.     Malicious Prosecution

To state a Fourth Amendment claim based on malicious prosecution, Tucker must establish the defendant commenced or continued a criminal proceeding against her, the proceeding terminated in her favor, there was no probable cause for the criminal proceeding, and the criminal proceeding was instituted with actual malice. See Posr v. Doherty, 944 F.2d 91, 100 (2d Cir. 1991). Depending on context, "[m]alice may be inferred from a lack of probable cause." Osuna v. City of New York, No. 08 Civ. 4759, 2009 WL 2356424, at *5 (S.D.N.Y. July 30, 2009).

Decker is entitled to qualified immunity if his alleged conduct did not violate clearly established law. See Harlow, 457 U.S. at 817-18; see also Harris v. O'Hare, 770 F.3d 224, 239 (2d Cir. 2014) ("In determining whether officers are entitled to qualified immunity, the key question is whether the right in question was 'clearly established' at the time of the violation."). "To determine whether a right is clearly established, we look to (1) whether the right was defined with reasonable specificity; (2) whether Supreme Court or court of appeals case law supports the existence of the right in question, and (3) whether under preexisting law a reasonable defendant would have understood that his or her acts were unlawful." Scott v. Fischer, 616 F.3d 100, 105 (2d Cir. 2010).

Decker initiated a prosecution against Tucker based on an alleged violation of the Vermont mandatory reporter statute, 33 V.S.A. § 4913. The statute requires school superintendents to make a report to DCF when they have "reasonable cause to believe that any child has been abused or neglected." 33 V.S.A. § 4913(a). Decker argues no court has determined the meaning of "reasonable cause," and it is consequently unclear whether the statute requires a report of any allegation of abuse or only a report of a substantiated claim abuse has occurred. See Scott, 616 F.3d at 105 (to determine whether a right is clearly established, a court should assess whether "the Supreme Court or court of appeals" has decided the issue); Pabon v. Wright, 459 F.3d 241, 255 (2d Cir. 2006). ("When neither the Supreme Court nor this court has recognized a right, the law of our sister circuits and the holdings of district courts cannot act to render that right clearly established within the Second Circuit.").

Tucker argues Decker violated her clearly established rights by charging her without probable cause and on the basis of a false affidavit. See Soares v. State of Connecticut, 8 F.3d 917, 920 (2d Cir. 1993) ("It is well-established that a person has a clearly established right not to be arrested or prosecuted without probable cause."). In assessing a probable cause determination on a

6

qualified immunity motion, "a court should put aside allegedly false material, supply any omitted information, and then determine whether the contents of the 'corrected affidavit' would have supported a finding of probable cause." Id.  Here, Tucker alleges Decker's probable cause affidavit contained several misstatements.  First, J.B. claimed Brigham patted her bottom, but Decker mischaracterized this in his affidavit as a "grab."  (Complaint ¶ 16.)  Second, J.B. told Decker no one was within grabbing range at the time of the incident, but Decker stated in his affidavit Brigham was within grabbing range.  (Id. ¶ 17.)  Third, Decker did not know if the camera in the hallway was accurate or inaccurate, but instead stated it was inaccurate.  (Id. ¶ 18.)  Excising these alleged false statements from Decker's affidavit does not negate probable cause, as even without these statements the affidavit supported finding Tucker had learned of J.B.'s claim of sexual abuse and failed to report that claim.  See Smith v. Edwards, 175 F.3d 99, 106 (2d Cir. 1999) (a case should be dismissed on qualified immunity grounds if correcting an affidavit would not negate probable cause).

      Tucker argues that even so, Decker lacked probable cause because he could not conclude there were "reasonable grounds for anyone to conclude that abuse occurred."  (Doc. 5 at 7.)  As established by Tucker's pleadings, J.B. alleged abuse and Tucker learned of this allegation and did not report it.  The parties disagree as to whether this unsubstantiated allegation of abuse can establish the "reasonable cause" necessary to trigger the mandatory reporter statute, 33 V.S.A. § 4913.  The "reasonable cause" standard remains undefined.  In one opinion, the Second Circuit concluded a mandatory reporter in Vermont did not have "reasonable cause" to believe abuse had occurred when he learned of an abuse allegation but later was withdrawn.  See Wilkinson ex rel. Wilkinson v. Russell, 182 F.3d 89, 100 (2d Cir. 1999).  Nothing in this opinion indicates an unsubstantiated allegation of abuse alone cannot provide "reasonable cause."  It certainly cannot be said it was "clearly established" that Tucker had no duty to report J.B.'s allegations, so that Decker

acted in violation of clearly established law in charging her with violating the statute. In fact, the language in the mandatory reporter statute suggests that reporters have a duty to report even unsubstantiated allegations. The statute requires reporting within 24 hours, 33 V.S.A. § 4913(a), grants immunity from civil or criminal liability arising from making good faith reports, 33 V.S.A. § 4913(d)(1), and expressly provides for the reporting of "suspected" child abuse, 33 V.S.A. § 4911(3). The statute demands timely reports of mere suspicion and protects reporters from the repercussions of making unsubstantiated reports, suggesting that the legislature intended to encourage the disclosure of all allegations of abuse, regardless of the level of substantiation.

   Because appellate courts have done little to explicate the meaning of the legal standard in 33 V.S.A. § 4913, Decker did not act unreasonably by taking the position that J.B.'s unsubstantiated claim alone provided "reasonable cause" to believe she had been abused. Decker was informed about J.B.'s allegations, that Tucker was aware of J.B.'s allegations, and that Tucker did not report those allegations. There is no dispute about these facts, only as to whether they amounted to probable cause. Even if Decker's interpretation of the statute was ultimately incorrect, it was not unreasonable for him to believe Tucker had violated it since courts have not construed the statute such that its meaning is "clearly established." See Magnotti v. Kuntz, 918 F.2d 364, 367 (2d Cir. 1990) ("Evidence before the court might be insufficient to sustain a finding of probable cause for the warrant application, yet be adequate for the judge to conclude it was reasonable for [an officer] to believe he had a good basis for his actions.").

   Because Decker did not act unreasonably in charging Tucker with violating the reporter statute, he is entitled to qualified immunity from her constitutional malicious prosecution claim.

ii. <u>Defamation</u>

To state a Fourteenth Amendment defamation claim, a plaintiff must show "stigma plus," which requires "the utterance of a statement sufficiently derogatory to injure his or her reputation, that is capable of being proved false, and that he or she claims is false," plus a "material state-imposed burden or state-imposed alteration of the plaintiff's status or rights." <u>Vega v. Lantz</u>, 596 F.3d 77, 81 (2d Cir. 2010).

Tucker has alleged an injury to her reputation resulted in damages. (Complaint ¶¶ 34-35). She argues the publication of her arrest has prevented her from gaining new employment and that this qualifies as a material state-imposed burden. Tucker cannot state a constitutional claim by merely alleging she has been denied a position because of her public reputation. <u>See</u> <u>Neu v. Corcoran</u>, 869 F.2d 662, 667 (2d Cir. 1989) ("[D]efamation alone [does] not constitute deprivation of a protected liberty interest, absent impairment of a right or status previously recognized by state law."). Tucker may, however, state a defamation claim if she can show the defamation at issue "occurr[ed] in the course of dismissal or refusal to rehire the individual as a government employee or during termination or alteration of some other legal right or status." <u>Id.</u>

In <u>Valmonte v. Bane</u>, 18 F.3d 992 (2d Cir. 1994), the Second Circuit found including the plaintiff in a Central Register which by operation of law informed future employers of her status as a suspected child abuser was "a specific deprivation . . . caused by a statutory impediment established by the state." <u>Id.</u> at 1001. In <u>Valmonte</u>, any employer who chose to hire an individual listed on the Register was required to create a written record of the reasons for the hire. <u>Id.</u> at 996. Thus, the Second Circuit found "Valmonte is not going to be refused employment because of her reputation; she will be refused employment simply because her inclusion on the list results in an added burden on employers who will therefore be reluctant to hire her." <u>Id.</u> at 1001. Tucker argues because any

9

individual offered a job as a school superintendent in Vermont must undergo a background check which will uncover her arrest, see 16 V.S.A. § 254(b) (requiring a criminal background check of any applicant to a school superintendent position), her case is analogous to Valmonte.

Although Valmonte may ultimately be distinguishable based on the facts, the Court cannot dismiss Tucker's defamation claim on qualified immunity grounds at this point. Tucker alleges she has been rejected for comparable employment and claims the stigma associated with criminal charges undermines the likelihood she would obtain a similar position at another school. (Complaint ¶ 26.) Whether Tucker's claim ultimately prevails will depend on the facts surrounding her resignation from the superintendent position at Caledonia Central Supervisory Union and attempts to seek employment in another comparable position. If, for example, Vermont supervisory unions face specific obstacles in hiring superintendents who have been charged with failure to report child abuse, it may be that Decker's publication of her arrest resulted in a state-imposed burden. At the time of Decker's actions, Valmonte made it clear that including a person in a registry associated with child abuse -- which may be distinct from reporting child abuse -- can amount to a constitutional tort for defamation. See Anderson v. Creighton, 483 U.S. 635, 640 (1987) (a plaintiff can defeat a claim of qualified immunity when "in light of pre-existing law the unlawfulness [of the action in question is] apparent"); Reuland v. Hynes, 460 F.3d 409, 420 (2d Cir. 2006) (when prior cases have defined a right "with reasonable clarity," a defendant "would be entitled to qualified immunity only if it was objectively reasonable for him to believe [he could take an action] without violating that right").

Accordingly, Decker's motion to dismiss Tucker's constitutional claim based on defamation is denied.

    iii.  <u>Invasion of Privacy</u>

  To state a Fourteenth Amendment invasion of privacy claim, Tucker must first show she had "a privacy interest in the information allegedly disclosed" by demonstrating she had "a reasonable expectation of privacy." <u>Dumas</u>, 466 F. Supp. 2d at 440. Second, Tucker must show "the government actually disclosed this information or that a state statute, regulation or policy required the disclosure." <u>Id.</u> If Tucker satisfies both showings, the Court must determine if the government action was taken in furtherance of "important governmental objectives and . . . substantially related to achievement of those objectives." <u>Id.</u> (quoting <u>Craig v. Boren</u>, 429 U.S. 190, 197 (1976)). If Tucker cannot show she had a clearly established right to privacy at the time of the publication, Decker is entitled to qualified immunity. <u>See</u> <u>Gill v. DeFrank</u>, 8 F. App'x 35, 37 (2d Cir. 2001) (affirming the district court's decision finding defendants entitled to qualified immunity on an invasion of privacy claim when plaintiff's privacy right was not clearly established); <u>see also</u> <u>Tolan</u>, 134 S. Ct. at 1866 (a defendant is entitled to qualified immunity if a plaintiff cannot demonstrate a violation of a right).

  Whether Tucker had a reasonable expectation of privacy in her photograph and fingerprints depends on "the relevant statutory restrictions governing disclosure." <u>Soucie v. Cnty. of Monroe</u>, 736 F. Supp. 33, 36 (W.D.N.Y. 1990) (citing <u>Kimberlin v. U.S. Dep't of Justice</u>, 788 F.2d 434, 438 (7th Cir. 1986)). Tucker argues Vermont's fingerprinting law, 20 V.S.A. § 2061, prohibited Decker from fingerprinting and photographing her because she was not arrested. (Doc. 9 at 4.) The law provides a law enforcement officer "may take . . . the fingerprints and photographs of a person who is arrested or given a summons or citation for a misdemeanor, only in the event that the officer would be permitted to make an arrest." 20 V.S.A. § 2061(b). Tucker apparently construes this provision to establish a statutory right not to be fingerprinted and photographed. But it is not clear

this statute confers rights on individuals.  In a similar context, courts have found statutes expressly prohibiting the release of juvenile criminal records do not confer constitutional privacy rights on individuals.  See, e.g., Doe v. Town of Madison, No. 3:09 CV 2005, 2010 WL 3829186, at *7 (D. Conn. Sept. 22, 2010) ("Those courts that have addressed the issue have generally found that state statutes protecting the confidentiality of juvenile records do not give rise to a constitutionally protected liberty or property interest.").  Furthermore, it is undisputable that as a general matter, records related to criminal proceedings are public information.  See Paul, 424 U.S. at 713 (rejecting the notion that a plaintiff might have "a [constitutional] claim that the State may not publicize a record of an official act such as an arrest").

Tucker also cites cases addressing a privacy interest in mug shots under the Freedom of Information Act ("FOIA").  In Times Picayune Publishing Corp. v. U.S. Department of Justice, 37 F. Supp. 2d 472 (E.D. La. 1999), the court found individuals had a "protectable privacy interest" in mugshot photos under FOIA.  See id. at 477.  Similarly, in Karantsalis v. U.S. Department of Justice, 635 F.3d 497 (11th Cir. 2011), the court found booking photographs implicated a "personal privacy interest" under FOIA.  Id. at 503.  Those cases are by their own terms inapposite because "[t]he right of privacy formulated under the Constitution and the common law are different from the privacy interests protected under FOIA."  Times Picayune Publ'g Corp., 37 F. Supp. 2d at 476; see also U.S. Dep't of Justice v. Reporters Comm., 489 U.S. 749, 763 n.13 (1989) (finding "personal privacy" under FOIA is distinctly separate from a constitutional privacy right).  Tucker also cites York v. Story, 324 F.2d 450 (9th Cir. 1963), in which police officers took and disseminated nude photographs of an assault victim.  The court stated, "[n]or could we imagine a more arbitrary police intrusion upon . . . privacy than for a male police officer to unnecessarily photograph the nude body of a female citizen who has made complaint of assault upon her . . . and to distribute those

photographs." Id. at 455. Such a "novel" claim is distinguishable from the far more routine mugshots Decker took of Tucker following the issuance of charges against her. Id. at 456.

Accordingly, Tucker had no reasonable expectation of privacy in her fingerprints and photographs. Because Tucker cannot show she had a right to not be fingerprinted and photographed, it cannot be said that Decker violated her constitutional right. Therefore, he is entitled to qualified immunity from Tucker's constitutional invasion of privacy claim.

D.      Pendent State Law Tort Claims

In addition to constitutional tort claims, Tucker's complaint raises state law tort claims for malicious prosecution, defamation, and invasion of privacy. Decker sought to dismiss these claims on the assumption that all of the federal law claims would also be dismissed, thus depriving the Court of pendent jurisdiction over the state law claims. See Brzak v. United Nations, 597 F.3d 107, 113-14 (2d Cir. 2010) (stating "if a plaintiff's federal claims are dismissed before trial, the state claims should be dismissed as well") (quotations omitted).

Since the Court has denied Decker's motion to dismiss Tucker's constitutional claim for defamation, it retains pendent jurisdiction over Tucker's related state law tort claims, which arise from the same underlying facts. See 28 U.S.C. § 1367(a) (district courts have supplemental jurisdiction over "all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."). Although Tucker's federal constitutional claims for malicious prosecution and invasion of privacy are dismissed, federal qualified immunity does not protect Decker from her analogous state law claims. See Stein ex rel. Stein v. Barthelson, 419 F. App'x 67, 71 n.3 (2d Cir. 2011) (a district court's resolution of federal constitutional claims based on qualified immunity "is not necessarily dispositive" of related state law claims); Jenkins v. City of New York, 478 F.3d 76, 86

(2d Cir. 2007) ("'Qualified immunity' protects an official from liability under <u>federal</u> causes of action but is not generally understood to protect officials from claims based on state law."). Thus, absent arguments apart from federal qualified immunity, Decker's motion to dismiss Tucker's state law claims is denied.

IV.     <u>Conclusion</u>

Based on the foregoing analysis, Defendants' motion to dismiss (Doc. 4) is GRANTED in part and DENIED in part.  Defendant Decker's motion to dismiss is GRANTED as to Plaintiff Tucker's constitutional claims based on malicious prosecution and invasion of privacy.  Defendant Decker's motion to dismiss is DENIED as to Plaintiff Tucker's constitutional claim for defamation and her state law claims for malicious prosecution, defamation, and invasion of privacy.

SO ORDERED.

Dated at Brattleboro, in the District of Vermont, this 17th day of December, 2014.

/s/ J. Garvan Murtha
Honorable J. Garvan Murtha
United States District Judge