UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | | |
|---|---|---|
| MARTHA TUCKER, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | File No. 1:14-cv-163-jgm |
| | : | |
| LYLE DECKER, | : | |
| | : | |
| Defendant. | : | |
| | : | |

RULING ON MOTION FOR SUMMARY JUDGMENT
(Doc. 45)

I.   Introduction

In July 2014, Plaintiff Martha Tucker commenced this action against Defendant Lyle Decker, a Vermont state police officer, alleging malicious prosecution, defamation, and invasion of privacy torts under 42 U.S.C. § 1983 and state common law.  (Doc. 1.)  Following the Court's ruling on his motion to dismiss (Doc. 10), Decker moves for summary judgment on the remaining federal claim of defamation and the state law claims.  (Doc. 45.)  Tucker opposes the motion (Doc. 46), and Decker has filed a reply.  (Doc. 49.)  For the following reasons, Decker's motion is granted.

II.   Background

   A.   Procedural

On December 17, 2014, the Court granted in part and denied in part Decker's motion to dismiss.  (Doc. 10.)  The motion was granted as to Tucker's constitutional claims based on malicious prosecution and invasion of privacy because he was entitled to qualified immunity.  Tucker's constitutional claim for defamation survived the motion to dismiss because whether the claim could prevail depended on facts to be determined in discovery.  See Doc. 10 at 9-10.  The motion was also denied as to Tucker's state law claims for malicious prosecution, defamation, and invasion of privacy

because Decker sought to dismiss them solely based on the assumption all the federal law claims would be dismissed and the Court would be deprived of supplemental jurisdiction over the state law claims.  As one federal claim remained, the Court retained supplemental jurisdiction under 28 U.S.C. § 1367(a), and, while Tucker's federal constitutional claims for malicious prosecution and invasion of privacy were dismissed, federal qualified immunity does not protect Decker from her analogous state law claims.  (Doc. 10 at 13-14.)

  B. Factual[1]

Plaintiff Martha Tucker was the Superintendent of Schools for the Caledonia Central Supervisory Union ("CCSU") from July 2008 to June 2014.  On April 29, 2013, she learned J.B., a student at K-12 Danville School, a member of CCSU, claimed she had been subjected to inappropriate physical contact by a teacher.  Tucker did not report the claim to the Department for Children and Families ("DCF") within 24 hours.  J.B's parents reported the allegation to DCF, which contacted the Vermont State Police ("VSP").  Defendant Lyle Decker, a VSP trooper, investigated the report of abuse.  Tucker disputes Decker's claim that a Deputy State's Attorney for Caledonia County told him to charge Tucker and notes Decker wrote and signed the Affidavit of Probable Cause that provided the basis for charging her.  Compare Doc. 45-1 ¶ 5 with Doc. 46-2 ¶ 5.

On July 8, 2013, Decker cited Tucker for failure to report child abuse or neglect, under Vt. Stat. Ann. tit. 33, § 4913, and neglect of duty by a public officer, under Vt. Stat. Ann. tit. 13, § 3006.  Decker went to Tucker's office to deliver the citation, but she was not available.  When she called, he asked her to come to the VSP barracks in St. Johnsbury to receive the citation.  Upon her arrival at the barracks, Decker fingerprinted and photographed Tucker.

---

[1] The facts are gleaned from the parties' submissions, specifically their respective statements of fact and responses.  (Docs. 45-1, 46-2.)  The Court notes instances in which the parties disagree.

Decker prepared an initial draft of a press release about the allegations against Tucker and sent it to VSP's Public Information Officer ("PIO"). While Decker states the PIO edited the draft, Tucker states she does not have knowledge of revisions to the press release made by the PIO. Compare Doc. 45-1 ¶ 11 with Doc. 46-2 ¶ 11. The press release, as drafted by Decker, stated, in full:

> The Vermont State Police began an investigation of a Danville High School student that reported to have been inappropriately touched twice by a Danville School Teacher on April 29, 2013. This case was reported to Noah Noyes, principle [sic], who also notified Martha Tucker, the superintendent. Noyes and Tucker never reported this to the Department of Children and Families (DCF) as required as mandated reporters within 24 hours. On May 8, 2013, DCF learned of this incident through student's parents. This allegation of the alleged inappropriate contact between the teacher and the student is still being investigated and the details will not be released at this time.

(Doc. 45-6 at 2.) The PIO sent the press release via e-mail to media outlets and attached the photograph of Tucker. The PIO's email inserted the "title" of "Arrests for Failure to Report Child Abuse and Neglect, and Neglect of Duty by a Public Officer," and, among other changes, included an additional paragraph: "Noyes and Tucker were cited and released. They are both scheduled to appear on August 12th, 2013 [at] Caledonia Criminal Court to answer to the charges of Failure to Report Child Abuse and Neglect of Duty by a Public Officer." Id. at 4. Media outlets reported the citation and ensuing prosecution. Tucker answered affirmatively at her deposition when asked if the press coverage indicated that she would fight the charges. (Doc. 46-3 ("Tucker Dep.") 135:2-4.) She, however, disputes that this was so in her statement of disputed material facts. (Doc. 46-2 ¶ 14.)

On July 23, 2013, Tucker's contract with CCSU was fully executed twice by her (as employee and Superintendent) and the Board chair, extending her position as Superintendent from July 1, 2013 through June 30, 2015. (Doc. 45-9.) The contract provided CCSU could terminate the contract for just and sufficient cause without notice or pay. Without just cause, CCSU could

terminate for any reason, but Tucker would be entitled to notice and her full salary under the contract. The contract could also be terminated at any time by mutual agreement of the parties.

On August 8, 2013, the Caledonia Criminal Court found probable cause to issue the citations. Tucker asserts the probable cause was based on Decker's misleading affidavit. See Doc. 46-2 ¶¶ 5, 30.

After Tucker was cited, she applied for a position as Superintendent of the Addison Northwest Supervisory Union. She was employed by CCSU at the time, but had given notice that she was leaving. Tucker Dep. 42:6-10. Tucker was not offered the Addison Northwest position and the search consultant told her the committee found her to be defensive when asked about the allegations and resulting citation.

Sometime before January 28, 2014, Tucker advised the CCSU Board Chair she would not be returning as Superintendent for the 2014-2015 school year and, on January 28, sent a letter to school employees with the same information. CCSU did not terminate Tucker or ask her to resign. Following her rejection for the Addison Northwest position, Tucker has not sought or been offered employment as a superintendent since leaving CCSU. She currently works as a consultant. No one has requested a copy of her criminal record from the Agency of Education and she has not undergone a criminal background check since she left CCSU.

On April 1, 2014, Tucker moved to dismiss the criminal charges under Vermont Rule of Criminal Procedure 12, arguing insufficient evidence, and under Rule 48, arguing the interests of justice. Tucker argued six factors weighed in favor of a Rule 48 dismissal, one of which was Decker's personal animus, including that Decker had no right to fingerprint her or take her mugshot under state law or VSP policy. Ultimately, the court dismissed the charges, finding the State did not

have sufficient evidence to prove Tucker was required to report the claim to DCF. The court stated it did not find evidence of animus and did not dismiss the case on that basis.

III. Discussion

    A. Legal Standard

Summary judgment is appropriate only where the parties' submissions show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The Court must resolve ambiguities and draw inferences in favor of the non-moving party. Salahuddin v. Goord, 467 F.3d 263, 272 (2d Cir. 2006) (citation omitted). The court's function is not to resolve disputed issues of fact but only to determine whether there is a genuine issue of material fact to be tried. See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Rule v. Brine, Inc., 85 F.3d 1002, 1011 (2d Cir. 1996). "If, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper." Fischl v. Armitage, 128 F.3d 50, 56 (2d Cir. 1997) (internal quotation marks and citation omitted). Credibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment. See, e.g., Fed. R. Civ. P. 56(e) 1963 advisory committee's note; Anderson, 477 U.S. at 255.

State officials are entitled to qualified immunity when their alleged conduct does not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 817-18 (1982.) To determine whether an official is entitled to qualified immunity, courts engage in a two-pronged inquiry asking whether (1) the facts show the officer's conduct violated a federal right, and (2) whether the right in question was clearly established at the time of the violation. See Tolan v. Cotton, 134 S. Ct 1861, 1865-66 (2014).

"Courts have the discretion to decide the order in which to engage these two prongs." Id. at 1866. "Although a mere mistake in the performance of an official duty may not deprive the officer of qualified immunity, the doctrine does not shield performance that either (a) was in violation of clearly established law, or (b) was plainly incompetent." Manganiello v. City of New York, 612 F.3d 149, 165 (2d Cir. 2010); see also Ashcroft v. Al-Kidd, 131 S. Ct. 2074, 2085 (2011) (qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law"). "Ultimately, the question is not what a lawyer would learn or intuit from researching case law, but what a reasonable person in the defendant's position should know about the constitutionality of the conduct." Velez v. Levy, 401 F.3d 75, 100 (2d Cir. 2005) (internal quotation and citation omitted). The defendant bears the burden of establishing qualified immunity. See Vincent v. Yelich, 718 F.3d 157, 166 (2d Cir. 2013).

    B.    Federal Defamation Claim

Decker seeks summary judgment on Tucker's Fourteenth Amendment defamation claim arguing he is entitled to qualified immunity. (Doc. 45 at 7-13.) Tucker argues Decker is not entitled to qualified immunity because she can show a constitutional violation and that the constitutional right was clearly established. (Doc. 46 at 4-10.)

To state a Fourteenth Amendment defamation claim, a plaintiff must show "stigma plus," which requires "the utterance of a statement sufficiently derogatory to injure [plaintiff's] reputation, that is capable of being proved false, and that he or she claims is false," plus a "material state-imposed burden or state-imposed alteration of the plaintiff's status or rights." Vega v. Lantz, 596 F.3d 77, 81 (2d Cir. 2010). If plaintiff can show the deprivation of a protected liberty interest through a stigma-plus injury, due process usually requires some form of hearing prior to the liberty

6

deprivation or, in some instances, a post-deprivation hearing. See DeBlasio v. Novello, 244 F.3d 292, 302, (2d Cir. 2003).

The facts do not show Decker's statement is capable of being proved false. Tucker argues the title of the press release--"Arrests for Failure to Report Child Abuse and Neglect, and Neglect of Duty by a Public Officer"--was false because Tucker was never arrested. (Doc. 46 at 5.) The press release as drafted by Decker does not contain a title; the "title" appears as the subject of and the first line of text in the email sent by the PIO. See Doc. 45-6. Tucker also argues the statement that "neither Noyes or Tucker reported the incident to DCF, as required by law as mandated reporters within 24 hours"[2] is false because a failure to report cannot occur without a duty to report and "Tucker was not 'required' to report unless she had reasonable cause to believe that abuse occurred." (Doc. 46 at 5.) Tucker does not dispute she did not report the incident to DCF or that she was a mandated reporter. As the press release announced charges, and, as sent to media outlets, included information regarding a court date to "answer the charges," the statement read in context was not false. To the extent that Decker's statements in the press release could be deemed to be misleading or overbroad, the doctrine of qualified immunity "gives ample room for mistaken judgments." Zieper v. Metzinger, 474 F.3d 60, 71 (2d Cir. 2007).

In ruling on the motion to dismiss, the Court stated Tucker could not state a constitutional claim by alleging she was denied a position because of her public reputation, but noted she could "state a defamation claim if she [could] show the defamation at issue 'occurred in the course of dismissal or refusal to rehire the individual as a government employee or during termination or alteration of some other legal right or status.'" (Doc. 10 at 9 (quoting Neu v. Corcoran, 869 F.2d

---

[2] The press release, as draft by Decker, stated: "Noyes and Tucker never reported this to [DCF] as required as mandated reporters within 24 hours." (Doc. 45-6 at 2.)

662, 667 (2d Cir. 1989).) Accordingly, the Court held it could not dismiss her defamation claim on qualified immunity grounds at that point because whether her claim would ultimately prevail depended on the facts surrounding her resignation from the CCSU Superintendent position and her attempts to seek employment in another comparable position. Id. at 10.

Assuming Tucker has demonstrated stigma by pointing to statements she attributes to Decker in the July 2013 press release, she must also show a "plus." She argues her "constructive discharge" from her employment as Superintendent at CCSU satisfies the plus prong of the test. (Doc. 46 at 6-7.) Even if the statements in the press release were attributable to Decker and were false, Tucker has not demonstrated a genuine issue with regard to deprivation of a liberty interest rising to the level of a constitutional claim because the defamation did not occur at the time of her termination. See Neu, 869 F.2d at 667; Doc. 10 at 9. In fact, she was not terminated. Tucker admits she resigned her position after the CCSU Board had entered a new contract with her to serve as Superintendent after the state charges and press release issued. In these circumstances, it is unclear to the Court how the CCSU Board could have offered her a pre-termination hearing as required due process.

Tucker's attempt to create a material dispute of fact regarding the plus element by asserting she has been told she is "unemployable as a Superintendent in Vermont" is insufficient. See Doc. 46 at 9. Other than the Addison Northwest Supervisory Union Superintendent position for which she was rejected, Tucker has not sought or been offered employment as a superintendent since leaving her position with CCSU. She asserts she has been told by the Executive Director of the Vermont Superintendents Association and the former Deputy Commissioner of the Agency of Education she is unemployable in Vermont. (Doc. 46-1 ¶ 24.) As the Court has noted, Tucker cannot state a constitutional claim by alleging she was denied a position because of her reputation.

Accordingly, evidence her reputation would preclude her from being hired <u>if she applied</u> to a position cannot support a constitutional claim. <u>Sadallah v. City of Utica</u>, 383 F.3d 34, 40 (2d Cir. 2004) ("[D]eleterious effects flowing directly from a sullied reputation, standing alone, do not constitute a 'plus' under the 'stigma plus' doctrine." (internal quotation marks and citation omitted)).

Further, even if Tucker had demonstrated a "plus," she has not shown the stigma and the plus are "sufficiently proximate." This proximity is present where the stigma and plus appear, to a reasonable observer, connected and the actor imposing the plus explicitly or implicitly adopted the stigmatizing statements. <u>Velez</u>, 401 F.3d at 89. Where the stigma and plus originate with different actors, it is possible that "one or more defendants whose actions collectively <u>implicate</u> a liberty interest may not be <u>liable</u> for the deprivation of that liberty interest." <u>Id.</u> at 89 n.12. For example, where a particular defendant lacks the power to provide process to the plaintiff in connection with the liberty deprivation, that defendant cannot be liable for deprivation. <u>See id.</u> at 93. Even if Decker caused the stigma, he is not alleged to have imposed the plus nor could he have because he did not have legal authority to remove her from her position as Superintendent or power to provide her process. Accordingly, Tucker cannot show the presumed stigma is sufficiently proximate to any plus to state a claim against Decker.

The facts do not show Decker violated a federal right of Tucker's and he is entitled to qualified immunity. Decker's motion for summary judgment is granted as to Tucker's Fourteenth Amendment defamation claim.

Even if Tucker had demonstrated a stigma-plus claim, the Court could not hold that the right in question was clearly established at the time of the violation. As the Second Circuit has noted, Supreme Court precedent establishes "no name-clearing hearing [is] required . . . when [a] state employer defames [an] employee 'who continues to be an employee.'" <u>Baden</u>, 799 F.2d at 830

(quoting Paul v. Davis, 424 U.S. 693, 710 (1976)).  As discussed above, Tucker continued to be CCSU Superintendent for many months after Decker's alleged defamation.

      C.      Pendent State Law Tort Claims

Each federal claim has now been dismissed on qualified immunity grounds.  Decker also moves for summary judgment on the state law tort claims asserting he is entitled to qualified immunity under Vermont law.  (Doc. 45 at 13-23.)  The Court did not decide state law qualified immunity because it was not specifically raised by the motion to dismiss.  See Doc. 10.  Decker argues the Court should not dismiss the state law claims on jurisdictional grounds at this stage, because qualified immunity should be decided at the earliest possible moment and principles of fairness and efficiency counsel the Court not to decline jurisdiction at this late stage where discovery has been conducted and a dispositive motion is pending.  (Doc. 49 at 10-11 (citing cases).)  Tucker asserts the state law claims should be addressed in state court if the federal claim for defamation does not survive summary judgment.  (Doc. 46 at 10 (citing cases).)

The Court retains jurisdiction over the state law claims, notwithstanding the cases Tucker cites.  Her citation to Leone v. Creighton, 948 F. Supp 192 (E.D.N.Y. 1996), is unavailing as the Leone Court retained supplemental jurisdiction of the state law claims though it had dismissed all plaintiff's federal claims, noting it is within a district court's discretion to keep them.  Id. at 197.  While the Sadallah Court instructed the district court to decline supplemental jurisdiction over any state law claims upon remand, in that case it was unclear whether plaintiff's complaint asserted claims under state law and the federal claims had been dismissed early in the litigation at the motion to dismiss stage before discovery.  Sadallah, 383 F.3d at 39-40.  The decision to retain jurisdiction is within the Court's discretion and, considering judicial economy, convenience, and fairness, the Court retains supplemental jurisdiction of Tucker's state law claims.  See Kroshnyi v. U.S. Pack

Courier Servs., Inc., 771 F.3d 93, 102 (2d Cir. 2014); see also Cook v. Nelson, 712 A.2d 382, 384 (Vt. 1998) (noting the Vermont Supreme Court encourages early resolution of immunity claims).

        1.       State Qualified Immunity

In Vermont, "[a] police officer is immune from tort liability when he is performing a discretionary act in good faith during the course of his employment and is acting within the scope of his authority." Livingston v. Town of Hartford, 979 A.2d 459, 463-64 (Vt. 2009). In applying qualified immunity to state tort law claims, Vermont courts "use the federal objective good faith standard to prevent exposing state employees to the distraction and expense of defending themselves in the courtroom." Cook, 712 A.2d at 384; see also Stevens v. Stearns, 833 A.2d 835, 840 (Vt. 2003) ("We use the Harlow standard to evaluate whether an official acted in good faith."). Thus, if an official's conduct does not violate clearly established rights of which a reasonable person would have known, the official is protected by qualified immunity from tort liability. Stevens, 833 A.2d at 840; Cook, 712 A.2d at 384.

        2.       Malicious Prosecution

The Court previously determined Decker did not act unreasonably in charging Tucker with violating the reporter statute because it was not unreasonable for him to believe she had violated the statute since courts have not construed the state statute such that its meaning was clearly established. (Doc. 10 at 5-8.) Accordingly, Decker is entitled to qualified immunity under state law as well because Decker's conduct did not violate a clearly established right. Stevens, 833 A.2d at 843 (giving preclusive effect to federal court's determination and therefore finding defendants entitled to qualified immunity as a matter of law).

### 3. Invasion of Privacy

The Court previously determined Tucker had no reasonable expectation of privacy in her fingerprints and photographs and, because she could not show she had a right to not be fingerprinted and photographed, Decker did not violate her rights.  (Doc. 11-13.)  Accordingly, Decker is entitled to qualified immunity under state law as well because Decker's conduct did not violate Tucker's rights.

### 4. Defamation

The Court determined above Decker is entitled to qualified immunity against Tucker's federal defamation claim.  See supra III.B.

Under Vermont law, to state a defamation claim, Tucker must establish the following elements: "(1) a false and defamatory statement concerning another; (2) some negligence, or greater fault, in publishing the statement; (3) publication to at least one third person; (4) lack of privilege in the publication; (5) special damages, unless actionable per se; and (6) some actual harm so as to warrant compensatory damages."  Russin v. Wesson, 949 A.2d 1019, 1020 (Vt. 2008) (internal quotation marks and citation omitted).

As determined above, the facts do not show Decker's statements in the press release are capable of being proved false.  "[I]t is now generally agreed that it is not necessary to prove the literal truth of the accusation in every detail, and that it is sufficient to show that the imputation is substantially true, or, as it is often put, to justify the 'gist,' the 'sting,' or the 'substantial truth' of the defamation."  Weisburgh v. Mahady, 511 A.2d 304, (Vt. 1986) (internal quotation marks and citation omitted) (holding media accounts "substantially accurate" notwithstanding an error in reporting the value of stolen coins at $50,000 instead of $500 because the sting of the report was plaintiff's arrest for receiving stolen property).  Here, the sting of the press release was that Tucker was charged with

failure to report child abuse.  That statement is substantially true:  Tucker was charged with, as she alleges, "a criminal violation of her duty as a mandatory reporter under 33 V.S.A. Section 4913." Compl. ¶ 20.

Further, Tucker's argument that Decker's statements--if false--were made with malice, and therefore the second element is satisfied, relies on the premise that the charges against her were not supported by probable cause.  (Doc. 46 at 16.)  This argument must fail because the Court has determined Decker had probable cause to believe Tucker violated the mandatory reporter statute, Vt. Stat. Ann. tit. 33, § 4913, because Tucker had learned of the claim of sexual abuse and failed to report it.  See Doc. 10 at 7.  Accordingly, Decker is entitled to qualified immunity under state law as well because Decker's conduct did not violate Tucker's rights.

IV.     Conclusion

Defendant Decker's Motion for Summary Judgment (Doc. 45) is GRANTED.

SO ORDERED.

Dated at Brattleboro, in the District of Vermont, this 23rd day of March, 2016.


       /s/ J. Garvan Murtha
       Honorable J. Garvan Murtha
       United States District Judge